UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECHO WESTLEY DIXON,

Plaintiff,

-against-

COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION; SENIOR PAROLE OFFICER RUSSEL MARQUIS; SENIOR PAROLE OFFICER THERESA GREEN-ONEAL; PAROLE OFFICER LATONIA TAYLOR; PAROLE OFFICER FELIX,

Defendants.

1:25-CV-2102 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

Plaintiff Echo Westley Dixon, who appears *pro se* and asserts claims under 42 U.S.C. § 1983 and under state law, alleges that he is currently in custody serving an illegally imposed period of post-release supervision ("PRS") that is being overseen by the Parole Division of the New York State Department of Corrections and Community Supervision ("DOCCS"). He names as Defendants, in their individual and official capacities: (1) the DOCCS Commissioner; (2) Senior Parole Officer Russell Marquis; (3) Senior Parole Officer Theresa Green-Oneal; (4) Parole Officer Latonia Taylor; and (5) Parole Officer Felix. Plaintiff seeks damages as well as injunctive relief.

Plaintiff filed with his complaint an application for a preliminary injunction and a temporary restraining order ("First OTSC") in which he asks the Court to enjoin the defendants from "enforcing [PRS] and [from] instituting revocation of [PRS] proceedings that will effect the unlawful [re]incarceration of [him] . . . after he has served his maximum term of imprisonment." (ECF 4, at 1-2.) Thereafter, Plaintiff filed a second application seeking similar immediate

injunctive relief ("Second OTSC") (ECF 9) and a supporting document (ECF 7). He also filed a letter seeking summary judgment relief. (ECF 8.)

To the extent that Plaintiff asserts claims for damages for alleged federal constitutional violations, the Court construes such claims as brought under 42 U.S.C. § 1983. The Court also construes any remaining claims for damages as brought under state law.

To the extent that Plaintiff asserts claims for injunctive relief challenging his current custody in PRS that is overseen by DOCCS, the Court construes such claims as seeking *habeas corpus* relief under 28 U.S.C. § 2254.

By order dated March 17, 2025, the court granted Plaintiff leave to proceed *in forma pauperis* ("IFP"), that is, leave to proceed without prepayment of fees.

For the reasons set forth below, the Court dismisses Plaintiff's claims for damages and grants Plaintiff 60 days' leave to either withdraw his claims for Section 2254 relief or file an amended petition for a writ of *habeas corpus* under Section 2254.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co*., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special

solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

The Court may entertain a petition for a writ of *habeas corpus* on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"), the Court has the authority to review and deny a Section 2254 petition without ordering a responsive pleading from the State "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Section 2254 Rules, Rule 4; *see Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000). Similar to Plaintiff's Section 1983 claims, the Court is obliged to construe *pro se habeas corpus* pleadings liberally and

interpret them "to raise the strongest arguments they *suggest*." *Triestman*, 470 F.3d at 474; *see Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). Nevertheless, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted).

**BACKGROUND**

The following allegations are drawn from the complaint.[1] On February 11, 2003, and again on March 17, 2003, Plaintiff was sentenced, following his convictions in New York State courts in Bronx and New York Counties, to terms of only imprisonment; his sentences did not include terms of PRS to be served after serving those terms of imprisonment. The maximum expiration date of Plaintiff's terms of imprisonment was November 28, 2023; on that date, he was released from DOCCS imprisonment. Also on that date, Defendants "unreasonabl[y] seized [his] person by forcing him to be subjected to [PRS, continuing to the present,] and [to] the possibility of being [re]incarcerated on a term of imprisonment that had concluded on his maximum expiration date." (ECF 1, at 3.) Defendants placed him in a homeless shelter where he has resided for over a year and where he is subject to urinalysis and to reporting to his parole officer every week.

On March 6, 2025, he reported to his parole officer "and was given the impression that such officer would revoke [his PRS] . . . and [re]incarcerate him due to violating [its] terms." (*Id.* at 4.) Plaintiff explained, however, "that he had been released from prison on his maximum expiration date and, therefore, could not be [re]incarcerated by way of a PRS violation because he had served every day judges had sentenced him to serve in prison." (*Id.*)

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless noted otherwise.

Though Plaintiff has been "[d]iagnosed with an antisocial personality disorder, Defendants [have] allowed [him] to be housed in shelters that contain[] criminals, drug addicts, mental health patients, and other downtrodden homeless persons, well aware that it pose[s] a substantial risk to [his] health and safety." (*Id.* at 5.) "The constant bickering, fighting, and mental health break downs by homeless persons within the shelter system is in no way conducive to [Plaintiff's] rehabilitation, mental stability, and his continued efforts to become a productive member of society." (*Id.*)

During Plaintiff's allegedly illegal term of PRS, Defendants have placed Plaintiff in a shelter where other former prisoners, who are also serving terms of PRS, reside; Defendants will not allow him to reside with a family member or friend who has a criminal record or background. While residing in that shelter, Plaintiff "has had several altercations with staff and shelter occupants[,] [s]o much so that . . . [Senior Parole Officer] Oneal threatened to put an ankle monitor on Plaintiff." (*Id.*)

**DISCUSSION**

**A. Claims for *habeas corpus* relief**

The Court construes Plaintiff's claims for injunctive relief that challenge the imposition of his current PRS custody as seeking *habeas corpus* relief under 28 U.S.C. § 2254, and not relief under Section 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]e hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Hardy v. Fischer*, 701 F. Supp. 2d 614, 621 (S.D.N.Y. 2010) (Stein, D.J.) ("Here, plaintiffs ask the Court . . . to direct defendants to vacate all terms of PRS imposed by DOC[C]S, rather than a sentencing judge, on individuals who have passed the maximum expiration date of their

determinate sentences. . . . Plaintiffs thus ask the Court to vacate the PRS to which they have been sentenced, albeit by DO[C]CS, rather than a judge. Both forms of relief would lift terms of 'confinement' as defined by *Preiser*. Accordingly, plaintiffs seek to curtail the duration of their confinement, and must do so through a writ of habeas corpus, rather than pursuant to [S]ection 1983.").

Section 2254 permits a federal district court to "entertain an application for a writ of habeas corpus . . . of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Challenges to allegedly illegally imposed terms of PRS are generally brought in petitions for writs of *habeas corpus* brought under Section 2254. *See, e.g.*, *Avent v. Meilunas*, No. 1:20-CV-0908, 2020 WL 9938201, at *2 n. 2 (N.D.N.Y. Aug. 21, 2020) ("[A]ny request for 'injunctive relief' which includes release from PRS may only be brought in a petition for habeas corpus pursuant to 28 U.S.C. § 2254."), *report & recommendation adopted*, 2021 WL 1996954 (N.D.N.Y. May 19, 2021); *Henderson v. Fischer*, No. 1:10-CV-2182 (PAC) (HBP), 2012 WL 137872, at *8 (S.D.N.Y. Jan. 18, 2012) ("Thus, to the extent plaintiff is seeking to accelerate his release date based on time he spent in custody as a result of an administratively imposed period of PRS, the amended complaint must be dismissed without prejudice to an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254."), *report & recommendation*, 2013 WL 638930 (S.D.N.Y. Feb. 20, 2013); *Cueto v. New York*, No. 09-CV-1514, 2011 WL 4460615, at *2 (E.D.N.Y. Aug. 26, 2011) ("[B]y alleging he was not informed at sentencing about the mandatory period of PRS, Plaintiff is essentially seeking a federal remedy that is properly obtained by way of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254."), *report & recommendation adopted*, 2011 WL 4454174 (E.D.N.Y. Sept. 26, 2011); *see*

*generally Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) (analyzing claims challenging DOCCS-imposed PRS under Section 2254). A person serving PRS is considered "in custody" for the purpose of Section 2254. *Earley*, 451 F.3d at 75.

1. Opportunity to withdraw such claims

There is no rule within this Circuit preventing a person from seeking Section 1983 relief and *habeas corpus* relief in the same pleading. *See Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008). But if Plaintiff does not want to pursue Section 2254 *habeas corpus* relief, he must notify the Court in writing, within 60 days of the date of this order, that he wishes to withdraw those claims that the Court has construed as seeking Section 2254 relief. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 282 (2d Cir. 2003) (instructing district courts not to recharacterize claims as brought under Section 2254, unless the person seeking such relief, "with knowledge of the potential adverse consequences of such recharacterization, agrees to have [their pleading] so recharacterized, or . . . the court . . . offers the . . . opportunity to withdraw [those claims] rather than have [them] so recharacterized" (internal quotation marks and citation omitted)). If Plaintiff does not seek to withdraw these claims within that period, or files an amended petition for Section 2254 relief within the same amount of time, the Court will understand that Plaintiff affirmatively seeks *habeas corpus* relief under Section 2254.

2. Rule 2(c) of the Section 2254 Rules

A person seeking Section 2254 relief must submit a pleading that conforms to the Section 2254 Rules. Rule 2(c) of those rules requires the pleading to specify all of a person's available grounds for Section 2254 relief, setting forth the facts supporting each of the specified grounds for Section 2254 relief, and stating the specific relief requested. The pleading must permit the Court and the opposing party or parties to comprehend both the person's grounds for Section

2254 relief and the underlying facts and legal theory supporting each ground so that the issues presented in the pleading may be adjudicated.

Because Plaintiff is proceeding *pro se*, and because he may not have included all of his grounds for Section 2254 relief and all the facts that support those grounds in the submissions that he has already filed, the Court grants Plaintiff leave to file an amended petition for a writ of *habeas corpus* under Section 2254 that conforms with the requirements of Rule 2(c). If Plaintiff files, in response to this order, such an amended petition, the Court will understand that he affirmatively wishes to seek Section 2254 relief.

3. Exhaustion of state court remedies

A person seeking Section 2254 relief must exhaust all available state court remedies before seeking such relief. 28 U.S.C. § 2254(b)(1)(A); *see Rose v. Lundy*, 455 U.S. 509, 510 (1982). This exhaustion doctrine means that the state courts must be given the first opportunity to review constitutional errors associated with such a person's confinement. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). A person may satisfy the exhaustion requirement by fairly presenting his claims through a state's established appellate review process. *Id.* at 845. "A [person] has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye v. Att'y Gen.*, 696 F.2d 186, 191 (2d Cir. 1982)).

With respect to available state court remedies, a person challenging the legality of a DOCCS-imposed PRS term may challenge that imposition by filing a petition for a writ of *habeas corpus*, under Article 70 of the New York Civil Practice Law and Rules ("Article 70"), in the appropriate state court. *See* N.Y.C.P.L.R. §§ 7001-7012; *see also* N.Y.C.P.L.R. § 7002(a) ("A person illegally imprisoned or otherwise restrained in his liberty within the state . . . may petition without notice for a writ of habeas corpus to inquire into the cause of such detention and for

deliverance."). If unsuccessful, the litigant must appeal the relevant judgment to a higher state appellate court, which is usually the New York Supreme Court, Appellate Division. *See* N.Y.C.P.L.R. § 7011; N.Y.C.P.L.R. § 5701(a)(1). If the Appellate Division's decision adversely affects that person, he must then seek leave to appeal from the New York Court of Appeals, the highest court in the State of New York. N.Y.C.P.L.R. § 5602.

That is not the only way to challenge the legality of a DOCCS-imposed PRS term. Alternatively, a person may make such a challenge by initiating a special proceeding under Article 78 of the New York Civil Practice Law and Rules ("Article 78") in the appropriate state court. *See* N.Y.C.P.L.R. §§ 7801-7806; *see also* N.Y.C.P.L.R. § 7801 ("Relief previously obtained by writs of certiorari to review, mandamus or prohibition shall be obtained in a proceeding under this article."); N.Y.C.P.L.R. § 7803 ("The only questions that may be raised in a proceeding under this article are: 1. whether the body or officer failed to perform a duty enjoined upon it by law; . . . 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed. . . ."). If the person is unsuccessful, he may seek leave to appeal in a higher state appellate court, which is usually the Appellate Division. *See* N.Y.C.P.L.R. § 5701(b)(1), (c). If still unsuccessful, he may then seek leave to appeal from the New York Court of Appeals. *See* N.Y.C.P.L.R. § 5602.

In one of Plaintiff's submissions, Plaintiff asserts that, on an unspecified date, he "was subjected to a [PRS] . . . revocation hearing and was told by the Judge that [Plaintiff] was facing 6 months of incarceration for not complying with [the terms of his PRS]." (ECF 7, at 1-2.) He also asserts that, in response, he "informed the court of not having any jail time remaining on the

sentences . . . [that were imposed on him,] however, the court refused to address the issued [he] had raised." (*Id.* at 2.) Plaintiff further asserts that, "[a]t the conclusion of the hearing, the criminal charges were dropped to a violation. However, the reduction of the offense made the revocation hearing unsustainable, as there existed no felony or misdemeanor upon which the hearing could proceed." (*Id.*)

To the extent that Plaintiff challenges the imposition of his PRS, he provides no facts showing that he has exhausted his available state court remedies via a state court *habeas corpus* proceeding brought under Article 70, and that he has appealed through the state court appellate system, or via a state court Article 78 proceeding, and that he has sought leave to appeal within the same state court appellate system, with respect to any grounds challenging the imposition of his PRS. The Court therefore dismisses Plaintiff's claims for Section 2254 relief without prejudice.[2] The Court, however, grants Plaintiff leave to file an amended petition under Section 2254 to allege facts showing that he has exhausted his available state court remedies before seeking such relief.

**B. Claims for damages**

The Court construes Plaintiff's complaint as asserting claims under Section 1983 solely for damages because Plaintiff cannot seek relief under Section 1983 for any the abovementioned

[2] Under the gatekeeping provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a *habeas corpus* petitioner must obtain authorization from the appropriate Court of Appeals before filing a second or successive *habeas corpus* petition. *See* 28 U.S.C. § 2244(b)(3)(A). As alluded to above, because conversion of a submission into a Section 2254 *habeas corpus* petition may restrict a litigant's future attempts to seek *habeas corpus* relief, federal district courts must normally give a *pro se* litigant notice and an opportunity to withdraw the submission *before* a court recharacterizes it as a Section 2254 petition. *See Cook*, 321 F.3d at 282. Here, however, giving Plaintiff notice and granting him an opportunity to withdraw *before* dismissing these claims without prejudice is unnecessary because dismissing these claims without prejudice does not trigger the AEDPA's restrictions on second or successive petitions. *See Slack v. McDaniel*, 529 U.S. 473, 489 (2000).

injunctive relief, which, as discussed above, is only properly sought as *habeas corpus* relief. *See Preiser*, 411 U.S. at 499-500. For the reasons set forth below, however, the Court must dismiss Plaintiff's claims for damages under Section 1983 and under state law.

1. Official-capacity claims for damages

Plaintiff seems to assert claims under Section 1983 and under state law against Defendants, all DOCCS officers, in both their individual and official capacities. (ECF 1, at 4.) The Court must dismiss those official-capacity claims under the doctrine of Eleventh Amendment immunity.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity. . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States, their agencies, and their instrumentalities from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

The Eleventh Amendment also precludes a plaintiff from seeking, in federal court, relief under state law against a State, its agencies, and its instrumentalities. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-42 (2002); *Halderman*, 465 U.S. at 120-21; *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("'Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts,' it has

been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court.”);

All officers of the State of New York enjoy Eleventh Amendment immunity when sued in their official capacities. *See, e.g.*, *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999); *Mobley v. Rodriguez*, No. 7-25-CV-6784 (NSR), 2025 WL 3042024, at *3-4 (S.D.N.Y. Oct. 21, 2025) (discussion in the context of Section 1983 and state law claims brought against state officials in their official capacities in a federal court). This includes the DOCCS Commissioner and DOCCS parole officers. *See Pineda v. Doe 1-2*, No. 7:25-CV-4552 (JGLC), 2025 WL 2145661, at *2-3 (S.D.N.Y. July 29, 2025). Congress has not abrogated the States' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court for claims under Section 1983, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

The Court therefore dismisses Plaintiff's claims for damages under Section 1983 and under state law against all Defendants, in their official capacities, under the doctrine of Eleventh Amendment immunity, for seeking monetary relief from defendants who are immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *see Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) (“[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction.”); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) (“Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction.”).

2. Individual-capacity claims for damages under Section 1983

The Court must dismiss Plaintiff's individual-capacity claims for damages under Section 1983 arising from Defendants' alleged efforts to illegally impose a term of PRS on Plaintiff. This is because these claims are barred by the favorable-termination rule first articulated in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Supreme Court of the United States has explained that, under this rule:

> a state prisoner's [Section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *see Heck*, 512 U.S. at 486-87 ("[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . ." (footnote omitted)). "[T]he purpose of the *Heck* favorable termination requirement is to prevent prisoners from using [Section] 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of their confinement." *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006). "[P]unishments related to [a prisoner's] term of imprisonment, or the procedures that led to them (if the procedural defect at issue was critical to the imposition of the punishment), must be attacked through a habeas petition." *Id.*

This holding has been applied to cases in which plaintiffs argue that a term of "PRS had been imposed administratively"; "courts in this circuit have uniformly held that[,] pursuant to *Heck* . . .[,] the claims of [such] plaintiffs . . . do not accrue until the underlying sentence is

invalidated[] or . . . until . . . [a] petition for writ of habeas corpus [is] granted." *Albergottie v. New York City*, No. 1:08-CV-8331 (SHS), 2011 WL 519296, at *4 (S.D.N.Y. Feb. 15, 2011) (citing cases); *see Price v. Goord*, No. 9:10-CV-0181, 2011 WL 1630727, at *5 (N.D.N.Y. Mar. 10, 2011) ("PRS is a part of a prisoner's sentence and '[t]he fact that [the] term was added administratively, rather than judicially, does not render it a separate component from plaintiff's sentence and thus beyond the reach of *Heck*.'" (citation omitted)), *report & recommendation adopted*, 2011 WL 1630174 (N.D.N.Y. Apr. 29, 2011).

Plaintiff alleges nothing to suggest that the PRS term imposed on him has been overturned or invalidated in any way, including, via a petition for a writ of *habeas corpus*. Accordingly, the Court dismisses, pursuant to the *Heck* doctrine, Plaintiff's individual-capacity damages claims brought under Section 1983 arising from Defendants' allegedly illegal imposition of a term of PRS on Plaintiff, for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but without prejudice to Plaintiff's reasserting these claims should his term of PRS be invalidated.[3]

**C. Leave to file an amended petition for a writ of *habeas corpus* under 28 U.S.C. § 2254**

The Court grants Plaintiff leave to submit an amended petition for Section 2254 relief within 60 days of the date of this order, as specified above. Should he decide to file an amended petition, he must state his grounds for relief and detail the steps he has taken to exhaust his available state court remedies as to those grounds. Plaintiff must exhaust all available state court

[3] To the extent that Plaintiff asserts individual-capacity damages claims under state law against Defendants, such claims are precluded by Section 24 of the New York Correction Law. N.Y. Corr. Law § 24; *Aponte v. Fischer*, No. 7:14-CV-3989 (KMK), 2018 WL 1136614, at *10-11 (S.D.N.Y. Feb. 28, 2018); *see* § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3).

remedies in order to proceed with this action.[4] *See* § 2254(b)(1)(A). The Court advises Plaintiff that any amended petition he files will completely replace his original complaint.

## CONCLUSION

The Court dismisses, for the reasons set forth above, Plaintiff's claims for damages. The Court dismisses Plaintiff's official-capacity damages claims, under both federal and state law, under the doctrine of Eleventh Amendment immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3). The Court dismisses Plaintiff's individual-capacity damages claims under Section 1983, under *Heck*, for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but without prejudice to Plaintiff's reasserting these claims should his term of PRS be invalidated. The Court dismisses any remaining individual-capacity damages claims under state law for seeking monetary relief from defendants that are immune from such relief and for lack of subject matter jurisdiction. N.Y. Corr. Law § 24; *see* § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3).

The Court construes Plaintiff's claims for injunctive relief challenging the allegedly illegal imposition of PRS on him as seeking *habeas corpus* relief under 28 U.S.C. § 2254. Inasmuch as Plaintiff does not want to pursue such relief, the Court grants him a 60-day period to withdraw such claims in writing. Alternatively, to the extent that Plaintiff does seek such relief, the Court grants him 60 days' leave to file an amended petition for such relief, as specified above. The written request to withdraw or the amended petition must be submitted to the Court's Pro Se Intake Unit within 60 days of the date of this order and bear the same docket number as this order.

---

[4] The AEDPA also requires that a Section 2254 action must be filed within one year of the latest of four dates specified. *See* 28 U.S.C. § 2244(d)(1).

An amended Section 2254 petition form is attached to this order, which, if Plaintiff seeks such relief, he should complete, sign, and submit, as specified above. Once submitted, the amended petition shall be reviewed for substantive sufficiency, and then, if proper, this action will be reassigned to a district judge in accordance with the procedures of the Clerk's Office. If Plaintiff does not withdraw his claims for Section 2254 relief or fails to file an amended petition, within the time allowed, and cannot show good cause to excuse such failure, the Court with understand that Plaintiff wishes to proceed with his claims for injunctive relief under Section 2254, but the Court will dismiss such claims without prejudice due to Plaintiff's failure to exhaust available state court remedies. The Court will, thus, direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

For all of the abovementioned reasons for dismissal of this action, the Court denies Plaintiff's requests for immediate injunctive relief sought in his First OTSC, in his Second OTSC, and in his letter-motion for summary judgment. (ECF 4, 8, 9.)

Because Plaintiff, at this time, makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

SO ORDERED.

Dated: July 1, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.